

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 12, 2019**

**United States Bankruptcy Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **eBackpack, LLC,** | § | **CASE NO. 19-30520-SGJ-7** |
| | § | |
| **ALLEGED DEBTOR.** | § | |

**MEMORANDUM OPINION IN SUPPORT OF ORDER GRANTING MOTION TO DISMISS INVOLUNTARY PETITION**

On April 25, 2019, this court held a hearing (the "Hearing") on the alleged debtor's Motion to Dismiss in the above-referenced involuntary bankruptcy case (the "Motion to Dismiss"). The involuntary bankruptcy case was filed on February 8, 2019, against eBackpack, LLC (the "Alleged Debtor") by Michael Zilinskas ("Mr. Zilinskas"), Jonathan Achenbach ("Mr. Achenbach"), and JMS School Holdings ("JMS" and, collectively with Mr. Zilinskas and Mr. Achenbach, the "Petitioners"). The court ruled orally at the Hearing that this involuntary case should be dismissed, stating some of its reasoning in doing so. The court signed an order granting the Motion to Dismiss on May 3, 2019 (the "Dismissal Order") [DE # 58]. In the Dismissal Order, the court reserved jurisdiction to award damages and attorney's fees and costs under 11

U.S.C. § 303(i) upon proper motion, to be filed no later than thirty (30) days following the entry of the Dismissal Order. Meanwhile, on May 17, 2019, the Petitioners filed a Motion for Amended or Additional Findings and to Alter or Amend Order Granting Motion to Dismiss (the "Post-Trial Motion") [DE # 60], pursuant to Fed. Rs. Civ. Proc. 52(b) and 59(e), as incorporated into this contested matter pursuant to Fed. Rs. Bankr. Proc. 9014 and 9023. This Memorandum Opinion is issued in response to the Post-Trial Motion. Herein, the bankruptcy court issues additional findings of fact and conclusions of law but denies the request to alter the Dismissal Order or any findings or conclusions stated orally. Thus, the Dismissal Order stands.

## I. Jurisdiction and Authority

This court has jurisdiction over the Motion to Dismiss and Post-Trial Motion pursuant to 28 U.S.C. § 1334(a) and (b). Core matters are involved pursuant to 28 U.S.C. § 157(b)(2)(A). The court has authority to preside over this matter pursuant to 28 U.S.C. § 157(a) and the Standing Order of Reference for this District. The statutory substantive authorities for the contested matter before the court are 11 U.S.C. §§ 303(b) and 305(a). More specifically, this court has been required to analyze whether, under section 303(b)(1), the claims of the Petitioners are the subject of a bona fide dispute as to liability or amount. As set forth below, the court has concluded that bona fide disputes exist with regard to the claims of the Petitioners, and, thus, the Petitioners lacked standing to commence the involuntary bankruptcy case, pursuant to section 303(b)(1). Alternatively, this court concludes that abstaining from and dismissing the case would be appropriate under section 305(a), as the "interests of creditors and the debtor would be better served by dismissal"—particularly since a state court receivership over the Alleged Debtor had been underway for approximately 144 days at the time this involuntary bankruptcy case was filed,

and the Petitioners have not articulated any reason why the receivership is not well-serving the interests of creditors and the Alleged Debtor.[1]

II. Findings of Fact

The Alleged Debtor, eBackpack, is an educational software and service business. Specifically, eBackpack provides learning management systems through software. The systems that eBackpack sells provide tools for students, teachers, parents, and administrators to better manage and review the student's learning outcomes. eBackpack's systems are used by many private and public schools throughout the nation.

Through March 2017, the Petitioners were the equity owners of eBackpack. The Petitioners decided they wanted to sell eBackpack.[2] The Petitioners circulated a Confidential Information Memorandum (the "CIM") through their financial advisor, Rainwater Business Advisors, to prospective purchasers of eBackpack.[3] This CMI was distributed to an entity referred to as EdTech, the eventual purchaser of the equity of eBackpack, in November 2016, as well as to other potential purchasers.[4] EdTech entered a Stock Purchase Agreement (the "SPA")[5] to buy the shares owned by two of the Petitioners, Mr. Zilinskas and Mr. Achenbach, effective April 16, 2017. JMS, the third Petitioner, was a liquidating limited liability company, owned

[1] Note that 11 U.S.C. § 303(h)(2) does not apply here, as the receivership over the Alleged Debtor had been in place 154 days, well over 120 days before the petition date.

[2] DE #9, pg. 9 (Alleged Debtor's Brief in Support of Motion to Dismiss Involuntary Petition, and the information being cited was unopposed by Petitioning Creditors in both their Response and oral arguments).

[3] DE #9, pg. 9 (Alleged Debtor's Brief in Support of Motion to Dismiss Involuntary Petition, and the information being cited was unopposed by Petitioning Creditors in both their Response and oral arguments).

[4] DE #9, pg. 9 (Alleged Debtor's Brief in Support of Motion to Dismiss Involuntary Petition, and the information being cited was unopposed by Petitioning Creditors in both their Response and oral arguments).

[5] DE #10, App. 40-88 (Stock Purchase Agreement); DE #28, App. 281-434 (Stock Purchase Agreement).

wholly by Mr. Zilinskas and Mr. Achenbach, setup under the SPA[6], for holding assets of eBackpack that EdTech was not interested in owning. The total purchase price under the SPA was $5,857,177.05, with $3.6 million of that amount being provided in cash to the sellers at the time of the closing.[7]

To fund this acquisition of the equity of eBackpack, EdTech needed financing.[8] Thus, EdTech and eBackpack jointly obtained a loan from Banc of California in the principal amount of $3,282,000. The loan from Banc of California was secured by a first priority security interest in all of eBackpack's assets.[9] In addition to the $3.6 million in cash paid at closing to the Petitioners, Mr. Zilinskas and Mr. Achenbach, in connection with implementation of the SPA, they received from eBackpack a promissory note in the amount of $1,750,000.[10] They were also supposed to receive another $500,000, which was to be placed in a segregated account and later released to the Petitioners.[11] Banc of California entered into Subordination Agreements with the Petitioners, giving Banc of California assurance that all debts owed to the Petitioners under the SPA (including the promissory note) would be subordinated to the debt owed to Banc of California under the loan agreement with the Alleged Debtor, other than a potential segregated

---

[6] DE #28, App. 338 (Exhibit C of the SPA for definition defining "Liquidating LLC" as a recently formed company created and owned by the Petitioners).

[7] DE #28, App. 281-434 (Stock Purchase Agreement); DE #28, App. 440 (email from Mr. James confirming approximate purchase price and structure of financing).

[8] DE #10, App. 51 (provision 3.5 in SPA stating agreement was contingent on financing from the Banc of California in the amount of $3,179,000).

[9] DE #9, pg. 12 (Alleged Debtor's Brief in Support of Motion to Dismiss Involuntary Petition, and the information being cited was unopposed by Petitioning Creditors in both their Response and oral arguments).

[10] DE #28, App. 440 (email from Mr. James confirming approximate purchase price and structure of financing).

[11] DE #28, App. 440 (email from Mr. James confirming approximate purchase price and structure of financing).

account that was created.[12] To date, eBackpack still owes between $3,000,000 and $3,100,000 to Banc of California under the loan agreement.[13]

Following the closing of the SPA, there were events that led eBackpack, now owned by EdTech, to suspect that information was omitted or misrepresented to it in connection with the transaction. Two months after closing, eBackpack realized that its second largest customer account from 2016, Apple MLTI, would be reduced by around 80% during 2017.[14] In September 2017, following the closing of the SPA, there were also thousands of emails deleted from eBackpack email accounts by Petitioner Mr. Zilinskas.[15]

On September 29, 2017, EdTech and eBackpack filed suit against Petitioners Mr. Zilinskas and Mr. Achenbach in Texas state court, in Dallas County, claiming that the SPA was obtained through fraud and the entirety of the SPA transaction should be avoided. EdTech and eBackpack focused their claims for fraud on four alleged occurrences, which were also presented to this bankruptcy court. These alleged occurrences included the concealment of information on the expiration and renewal of Apple MLTI, misrepresentations and omissions on customer renewal rates, concealment of emails regarding customer complaints and cancellations, and concealment of compensation agreements with the Chief Technology Officer of eBackpack. All of these alleged occurrences are highly contested by the Petitioners in almost every respect. Much of each

---

[12] DE #9, pg. 12 (Alleged Debtor's Brief in Support of Motion to Dismiss Involuntary Petition, and the information being cited was unopposed by Petitioning Creditors in both their Response and oral arguments).

[13] DE #9, pg. 12 (Alleged Debtor's Brief in Support of Motion to Dismiss Involuntary Petition, and the information being cited was unopposed by Petitioning Creditors in both their Response and oral arguments).

[14] DE #10, App. 7 (Emails to and from Mr. Achenbach recognizing the expiration of the MLTI program in March 2017).

[15] DE #10, App. 10 (Excerpt from deposition of Mr. Zilinskas stating he deleted at least 10,000 emails from an eBackpack company email account in September 2017).

dispute revolves around what was or was not presented and how the information was presented to the President of EdTech—whom is now also the CEO of eBackpack, Niklas James ("Mr. James").

On October 25, 2017, another state court lawsuit was filed involving these same parties. Specifically, the Petitioners, excluding JMS, filed suit against eBackpack and EdTech in Rockwall County, Texas. Messrs. Achenbach and Zilinskas, as plaintiffs this time, were suing for indebtedness owed on the promissory notes given to them pursuant to the SPA. The Dallas County lawsuit filed by EdTech and eBackpack was subsequently transferred to Rockwall County on December 19, 2017, and consolidated with the Petitioners' new lawsuit on February 21, 2018. The consolidated lawsuit remains pending in the 439th District Court of Rockwall County.

Petitioner JMS—the liquidating limited liability company that was created by the other Petitioners to hold certain assets of eBackpack that EdTech was not interested in acquiring—alleges to be owed $17,900 for certain accounts receivable designated in the SPA, but is not a party to the lawsuit against EdTech and eBackpack.

During the midst of this state court litigation, an agreed order was entered on September 17, 2018, between the Alleged Debtor and Banc of California, providing for the appointment of a receiver, attorney Howard Marc Spector ("Mr. Spector"), over the Alleged Debtor's business.[16] Recall that Banc of California has a lien on substantially all of the assets of the Alleged Debtor and is owed millions—and the Petitioners are subordinated to Banc of California. Mr. Spector represented at the Hearing that he has engaged in marketing and attempted to sell eBackpack, but has been unable to do so, and the value of the company has decreased to almost nothing at this point in time.

[16] DE #10, App. 240-52 (signed Agreed Order Granting Application for Immediate Appointment of a Receiver from state court).

To be clear, the consolidated state court litigation had been pending for approximately sixteen and a half months, when Petitioners filed this involuntary Chapter 7 bankruptcy case on February 8, 2019. The record presented to the bankruptcy court reflected that the parties have engaged in extensive discovery in the state court. The state court has thus far denied setting a date for a summary judgment hearing. On February 22, 2019, Petitioners removed the consolidated lawsuit to this bankruptcy court. Trial in the state court was earlier set to begin on March 25, 2019; however, a motion for spoliation instruction was filed by eBackpack and EdTech[17], and it remained pending.

Meanwhile, separate from the consolidated lawsuit in Rockwall County, there has been a lawsuit initiated by JMS against Banc of California regarding the nature of certain funds that JMS alleges are being held in trust for it in a Banc of California account and the interpretation of the aforementioned subordination agreements. The original amount of the funds to be held in a segregated account pursuant to the SPA was $500,000. There appear to be disputed issues regarding this account created under the SPA, and JMS may be entitled to a lesser amount, even if it were to succeed in the lawsuit.

The Alleged Debtor brought the Motion to Dismiss the involuntary case on March 6, 2019, and the subsequent Hearing was conducted on April 25, 2019.

## III. Conclusions of Law

### A. Dismissal under Section 303.

Section 303(a) of the Bankruptcy Code addresses the persons against whom an involuntary bankruptcy case may be commenced. It allows for the commencement of an involuntary

[17] *See* DE #10, App. 89-93 (computer forensic report used by Alleged Debtors to support the need for a spoliation instruction in state court).

bankruptcy case under Chapter 7 or 11 against a person (except a farmer, family farmer, or a corporation that is not a moneyed, business, or commercial corporation) that is eligible to be a debtor under the chapter under which such case is commenced. Here, there was no restriction under section 303(a) with eBackpack being placed into an involuntary case per se.

Section 303(b)(1), however, poses a problem in the case at bar. Section 303(b) addresses what entities have standing to commence an involuntary bankruptcy case. Section 303(b) provides that an involuntary case may be commenced by the filing with the bankruptcy court of a petition by:

> [T]hree or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $15,775 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims.

Section 303(b)(2) creates an exception to the requirement that there be three claimholders that file a petition, stating:

> [I]f there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in aggregate at least $15,775 of such claims.

The wording of section 303(b) was amended by Congress in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").[18] Prior to BAPCPA, the provision did not include the phrase "as to liability or amount" after the "bona fide dispute" language.[19] By adding the phrase "as to liability or amount" to section 303(b), Congress changed

---

[18] *Credit Union Liquidity Servs., L.L.C. v. Green Hills Dev. Co., L.L.C.* (*In re Green Hills Dev. Co., L.L.C.*), 741 F.3d 651, 656 (5th Cir. 2014).

[19] *Id.*

its meaning. Some pre-BAPCPA courts interpreted section 303(b) to only deny standing if there was a bona fide dispute as to ***liability***, but not amount.[20] Post-BAPCPA cases have recognized that a bona fide dispute merely as to the ***amount*** of the debt is now sufficient to deny a creditor standing to bring an involuntary petition.[21] Thus, in order to survive the Motion to Dismiss, the Petitioners here were required to show that all three of them hold claims against the Alleged Debtor (or at least one of them, if there are fewer than 12 claimholders) of an aggregate unsecured amount of at least $15,775, which claims are not contingent as to liability or the subject of a bona fide dispute as to the liability or amount.

The Bankruptcy Code does not define "bona fide dispute" and, in response, the Fifth Circuit held in *In re Sims*, that courts should measure "bona fide dispute" under an objective standard.[22] *Sims* elaborated that, under that objective standard, the bankruptcy court must "determine whether there is an objective basis for either a factual or legal dispute as to the validity of the debt."[23] In *Sims* the Fifth Circuit, citing *In re Rimmel*, 946 F.2d 1363, 1365 (8th Cir. 1991), further elaborated that a petitioning creditor must establish a prima facie case that no bona fide dispute exists with respect to its claim and, at that point, the burden shifts to the alleged debtor to present evidence demonstrating that a bona fide dispute exists.[24] Due to the standard being objective, neither the debtor's subjective intent nor his subjective belief is sufficient to meet its burden. The Fifth Circuit explained in *In re Green Hills Development Co., LLC*, that the

---

[20] *Id.*

[21] *Id.*

[22] *Sims v. Subway Equip. Leasing Corp.* (*In re Sims*), 994 F.2d 210, 221 (5th Cir. 1993), *cert den'd sub nom. Sims v. Subway Equip. Leasing Corp.*, 510 U.S. 1049 (1994).

[23] *Id*.

[24] *Id*.

bankruptcy court is not totally prohibited from addressing the legal merits of the alleged dispute; indeed, the court may be required to conduct a limited analysis of the legal issues in order to ascertain whether an objective legal basis for the dispute exists.[25] The bankruptcy court, however, is not to conduct a full trial to resolve all of the elements of the claims brought.[26] Thus, the court's task is to decide whether a dispute that is bona fide exists; the court is not actually to decide the dispute.

Bankruptcy courts commonly consider the existence and character of pending, but unresolved, litigation as evidence of a bona fide dispute.[27] A "creditor whose claim is the object of unresolved, multiyear litigation should not be permitted to short-circuit that process by forcing the debtor into bankruptcy."[28] The section 303(b) requirement was created to prevent creditors from using involuntary bankruptcy for that very use.[29]

In the instant voluntary case, there is sufficient credible evidence from the receiver, Mr. Spector, who has been in control of the Alleged Debtor's business, and who appeared at the April 25, 2019 Hearing, to establish that there are more than 12 claimholders of the Alleged Debtor, excluding employees or insiders. This creates a standing requirement that ***three*** or more entities holding claims, that are not contingent or the subject to a bona fide dispute as to liability or amount, must have filed the petition against the Alleged Debtor under section 303(b).

---

[25] *In re Green Hills,* 741 F.3d at 658.

[26] *See id.* at 658-59 (stating that the bankruptcy court is limited in its inquiry and should not resolve the merits of the dispute).

[27] *Id.*at 659.

[28] *Id*. at 660.

[29] *Id*.

Two of the three Petitioners in this bankruptcy case, Mr. Zilinskas and Mr. Achenbach, are involved in the consolidated lawsuits in Rockwall County regarding the claims they used to establish standing to bring this involuntary petition. These claims, involving money allegedly owed to the Petitioners under the SPA, are unquestionably subject to a ***dispute***. This court must determine if the dispute should be considered ***bona fide***, in light of the Fifth Circuit precedent of *In re Sims* and *In re Green Hills Development Co., LLC*.[30]

The burden first falls on the Petitioners to make a prima facie case that there is no bona fide dispute as to their claims, in order to establish standing to bring an involuntary petition. This initial burden on the Petitioners is a low bar. The court, in this instance, concludes that the Petitioners met their initial burden of creating a prima facie case through pleadings, accompanied by sufficient evidence. Thus, the burden shifted to the Alleged Debtor to show through evidence that a bona fide dispute exists objectively, based neither on the Alleged Debtor's subjective intent nor subjective belief.

In the present case, as in *Green Hills*, the Alleged Debtor brought a lawsuit in Texas state court claiming fraud against the Petitioners, seeking to avoid the underlying transaction that created the debt owed to the Petitioners under their two promissory notes.[31] In *Green Hills*, the court found that nineteen months of litigation in state court—including the fact that the litigation had survived motions for summary judgment during that time—to be sufficient evidence of a bona fide dispute.[32] The Fifth Circuit concluded that the petitioning creditor there was attempting to

[30] 994 F.2d 210; 741 F.3d 651.

[31] *See* 741 F.3d at 653.

[32] *See id*. at 653 (concluding, given the time and survival of separate summary judgment motions, the state court judges "concluded that the factual allegations and legal theories advanced by Green Hills have enough merit to justify careful consideration").

"short-circuit" the state litigation process by using the claim subject to said litigation to force the debtor into bankruptcy.[33] The bona fide dispute requirement "exists to prevent that very use of involuntary bankruptcy."[34]

The Petitioners and the Alleged Debtor in the case at bar have been litigating the claims used as standing to bring the involuntary petition for nearly sixteen and a half months in the consolidated Rockwall County lawsuit. Extensive discovery was conducted by both parties in the state court. The state court has not dismissed the consolidated lawsuit at any point—deferring a ruling on a motion for summary judgment. A trial date on these claims, at one point, was set for March 25, 2019.

The Petitioners have argued that, since the summary judgment motion in the state court has not been heard, this distinguishes and prevents the application of the reasoning in *Green Hills*.[35] The Petitioners also attest that there were attempts by them to have the state court rule on the motion for summary judgment, but the state court would not do so. This court believes that the actions of the state court, in the instant case, suggest that it believes that the legal theories advanced by eBackpack and EdTech have enough merit to warrant careful consideration. The legal principle set out in *Green Hills*, looking towards the nature of ongoing parallel litigation, applies in this case and weighs significantly towards concluding that the Petitioners have claims subject to a bona fide dispute.[36]

---

[33] *Id*. at 660.

[34] *Id*.

[35] *See id.* at 659.

[36] *See id.* at 659-60.

Extensive pleadings, briefs, and other documents were provided to this court, originating from both the bankruptcy and state court proceedings, which permitted limited legal analysis of the parties' disputes. These pleadings provide no clear result as to the merits of the litigation in the state court. Arguments were provided to support and refute claims from both the Alleged Debtor and the Petitioners. The Petitioners' pleadings suggested that there is evidence to prove that concealment and misrepresentation of information that the Alleged Debtor has asserted are unfounded. For example, the Petitioners point to emails and depositions that allegedly show that the CEO of eBackpack, Mr. James, was aware of the information that was claimed to be withheld involving the Apple MLTI agreements. On the other hand, the Alleged Debtor emphasizes a deposition of Petitioner Mr. Zilinskas addressing the deletion of company emails with potentially pertinent information.

The bankruptcy court's job under section 303(b) is not to conduct a thorough trial and determine the proper legal result.[37] The bankruptcy court should only determine, objectively, where there is a bona fide dispute.[38] Every aspect of these claims has been hotly contested and rebutted. This court could not possibly ascertain whether fraud occurred in the eBackpack transaction without conducting a thorough trial. This is a task that was well underway in the state court and is beyond the limited scope of the bankruptcy court in connection with the Motion to Dismiss. This court concludes, from the analysis of documents and arguments presented, that a bona fide dispute exists as to Mr. Zilinskas's and Mr. Achenbach's claims, under the objective standard of *Sims*. Therefore, the Petitioners, as a whole, lacked standing under section 303(b), to bring the involuntary bankruptcy case against the Alleged Debtor.

---

[37] *See id.* at 658-59.

[38] *See id.* at 658.

Further, if, alternatively, there were found to be fewer than twelve claimholders of the Alleged Debtor, JMS, the final claimholder on the petition, also holds a claim that is subject to a similar bona fide dispute. JMS has a pending lawsuit against Banc of California that arises from the same SPA and, in such lawsuit, Banc of California questions the liability and amount of JMS's claim. JMS, under the same legal analysis as the other Petitioners, similarly has a claim that is the subject of a bona fide dispute and lacks standing under section 303(b) to bring an involuntary petition.

In summary, the court concludes that a bona fide dispute exists as to all three of the Petitioners' claims. As such, the involuntary bankruptcy case must be dismissed.

B. Dismissal under Section 305

In addition to section 303(b), section 305 of the Bankruptcy Code presents appropriate legal grounds for dismissing this case.

Section 305(a)(1) allows that, after notice and hearing, a court may dismiss a case or suspend all proceedings if, "the interests of creditors and the debtor would be better served by such dismissal or suspension." Dismissal under section 305 is an extraordinary remedy, but may be granted in circumstances in which the interests of both the debtor and creditors would be better preserved by the bankruptcy court abstaining. Several courts have presented non-exhaustive lists of factors for bankruptcy courts to weigh in determining whether to abstain, developed on a case-by-case basis.[39]

The factors that this court believes are most relevant to weigh in the case at bar include: (1) whether there is already a pending proceeding in state court, or another forum is available to

[39] *See In re Spade*, 258 B.R. 221, 231 (Bankr. D. Colo. 2001); *See also*, *Remex Electronics Ltd. v. Axl Industries* (*In re Axl Industries, Inc.*), 127 B.R. 482 (Bankr. S.D. Fla. 1991).

protect the interests of both parties; (2) the assets available to be distributed through the bankruptcy estate; and (3) prejudice to the parties.

Bankruptcy courts will generally choose to abstain from disputes between two parties where the petitioner can obtain adequate relief in a non-bankruptcy forum.[40] In *In re Westerleigh Development Corp.*, the bankruptcy court for the Southern District of New York determined that, whether or not the petitioner had a bona fide claim against the debtor which is not in dispute was irrelevant.[41] Rather, a "bankruptcy court should not entertain a two-party dispute unless special circumstances exist, such as fraud, artifice, or scam."[42] The bankruptcy court for the District of Colorado has also opined that "[t]here is no need for a federal court to resolve [a] two-party dispute that implicates purely state law issues."[43]

The court may also look at the potential assets of the estate as a factor in determining whether to abstain.[44] Bankruptcy courts "have abstained where the only significant asset was a lawsuit. Since there was nothing to administer pending resolution of litigation, the court found that there was no estate of any significance. Dismissal without prejudice was therefore appropriate."[45] Further, under *In re Powers*, 35 B.R. 700 (Bankr. W.D. Mo. 1984), a bankruptcy court should not take jurisdiction over a debtor when the debtor's only significant asset is a state court lawsuit.

---

[40] *In re Westerleigh Dev. Corp.*, 141 B.R. 38, 40 (Bankr. S.D.N.Y. 1992) (citing *In re Axl Industries, Inc.*, 127 B.R. 482 (Bankr. S.D. Fla. 1991)).

[41] *Id.*

[42] *Id.*

[43] *In re Spade*, 258 B.R. at 235.

[44] *In re Axl Industries*, 127 B.R. at 485.

[45] *Id*. at 484-85.

This court is cognizant that abstaining under section 305 has been described as an extraordinary remedy, but it is appropriate under certain circumstances. Here, the Alleged Debtor has requested that the court abstain from and dismiss this involuntary case under section 305. Sufficient arguments and evidence have been produced in the Hearing to let the court conclude that to abstain and dismiss the involuntary case is in the best interests of both the Alleged Debtor and creditors under section 305(a)(1).

As described earlier, there has been an ongoing dispute among these parties that has been pending before a state court for an extended period of time, with a trial to occur imminently. It is clear to this court that there was a dispute amenable to relief in a non-bankruptcy forum, and was being properly handled by such forum. The special circumstances referenced by many courts, including in *Westerleigh*, have not been presented here.[46] The fraud and scam referenced in those cases were a broader species of fraud, and were not meant to encompass state law claims of fraud brought properly before a state court. Further, abstaining would not negatively impact the efficiency and administration of the case. Extensive discovery and hearings have already occurred and the litigation among the parties would be more efficiently handled in state court. Adding the bankruptcy case only layers on additional costs to all parties.

Moreover, considering the "potential assets of the estate" is a crucial factor in determining if abstaining is in the best interest of the debtor and all creditors under section 305(a)(1). Here, it is undisputed that the Alleged Debtor's business has been declining in value, and, in the many months since a receivership was established, all attempts by the receiver to sell the assets of the Alleged Debtor have been fruitless. The value of the property, while disputed at the time surrounding the SPA, appears currently to be of a de minimis amount. The only potential

---

[46] *See In re Westerleigh*, 141 B.R. at 40.

significant asset in the Alleged Debtor's estate is now the fraud claim that would allow the Alleged Debtor to recoup the money under the SPA from the Petitioners. There has been no evidence that Banc of California's liens have any defects. Thus, Banc of California would likely receive all value realized in a bankruptcy case. Banc of California supports dismissal of the bankruptcy case.[47] Even if the Petitioner JMS were to succeed on its claim that some portion of the $500,000 that was to be put in a segregated account was to belong to JMS, then Banc of California and JMS would be the only ones to recover any value in a bankruptcy case. It appears that there would be no money or assets left to pay any unsecured creditors, nor any funds to pay the Chapter 7 Trustee.

There has been no credible evidence of avoidance actions, or some unencumbered assets that might provide some benefit to creditors in the bankruptcy case. There has been no evidence or argument that the receivership process is flawed or problematic. There has simply been no evidence presented that the interests of the Alleged Debtor and creditors would be better served in bankruptcy.

Finally, by abstaining this court will not be prejudicing the Petitioners. There are sufficient remedies for them in state court. Also, given the minimal available assets of the Alleged Debtor at this juncture, there is no potential further loss to the Petitioners by this court abstaining and letting the state court resolve the fraud claims and counterclaims through its normal processes.

In conclusion, the court determines that the interests of both the Alleged Debtor and creditors would be better served by abstaining under section 305(a)(1).

---

[47] DE #26 (Banc of California's Response in Support of Motion to Dismiss Involuntary Petition, stating the opinion the Petitioners filed the involuntary case in bad faith).

C. Award of Attorney's Fees, Costs, Damages, or Punitive Damages Under Section 303(i)

In instances of dismissal of an involuntary case, the bankruptcy court also has discretion to order that the Petitioners pay costs, a reasonable attorney's fees, damages caused by the filing, and punitive damages under section 303(i) of the Bankruptcy Code. These remedies are only available when the dismissal of the case was without the consent of all the petitioners and the debtor has not waived the right to judgment under section 303(i). Specifically, under section 303(i)(1), costs or a reasonable attorney's fees may be granted at the discretion of the bankruptcy judge from the petitioner to the alleged debtor upon dismissal. Under section 303(i)(2), damages incurred by the alleged debtor caused by the filing of the involuntary petition, as well as punitive damages, may be granted "against any petitioner that filed the petition in bad faith."

As indicated earlier, in this court's May 3, 2019 Dismissal Order, it reserved jurisdiction to consider the shifting of attorney's fees, and potential actual or punitive damages for bad faith, under section 303(i). The court essentially bifurcated this matter and requested additional pleadings on whether attorney's fees, costs, or other damages are a proper remedy. The court indicated that a later hearing would be set to determine this issue "as necessary."

On May 24, 2019, the Alleged Debtor filed its Motion for Judgment of Costs, Fees, and Punitive Damages Pursuant to Section 303(i) of the Bankruptcy Code (the "Section 303(i) Motion") [DE #61]. Pursuant thereto, eBackpack requests an award of fees and costs in the amount of at least $27,173.65, which constitutes all fees and costs that eBackpack represents that it has reasonably incurred to date in response to the involuntary petition. This amount includes all fees and costs that eBackpack incurred in the related adversary proceeding which was remanded, but does not include any further fees or costs to be incurred in the event of further proceedings, such as an appeal. eBackpack has also sought $50,000 as punitive damages for the Petitioners'

alleged bad faith and improper purpose in filing the involuntary case. Not surprisingly, on June 14, 2019, the Petitioners objected to the Section 303(i) Motion and filed a Brief in support of their objection [DE ## 67 & 68]. A hearing on the Section 303(i) Motion and objection will be held on **August 14, 2019 at 1:30 p.m.**

****** END OF MEMORANDUM OPINION ******